**JOHN C. LEMON**
California Bar No. 175847
**LAW OFFICES OF JOHN C. LEMON, APC**
1350 Columbia Street, Suite 600
San Diego, California  92101
(619) 794-0423
john@jcl-lawoffice.com

Attorney for Mr. Gonzalez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 18cr1802-DMS |
| Plaintiff, | Date: April 2, 2021<br>Time: 11:00 a.m. |
| v. | |
| GILBERTO GONZALEZ, | **Memorandum of Points & Authorities** |
| Defendant. | |

## I. Introduction and Pertinent Facts

On March 6, 2018, Gilberto Gonzalez drove a Honda Accord to the Otay Mesa Port of Entry in the Sentri inspection lane. The primary inspector received a computer-generated alert and referred Gonzalez to secondary, where a search uncovered 27 packages of suspected narcotics hidden in the seats and quarter panels. Six packages allegedly contained 7.74 kilograms of heroin, ten contained 12.16 kilograms of cocaine, and eleven contained 5.74 kilograms of methamphetamine (gross weights). Gonzalez invoked his *Miranda* rights.

On April 4, 2018, the grand jury for the Southern District of California returned a three-count indictment charging Gonzalez with importation of cocaine, heroin, and methamphetamine. Doc. 17. On January 3, 2019, this Court relieved previous defense counsel and appointed undersigned counsel.

//

The parties have since litigated numerous pretrial motions and motions in limine. Relevant here, on December 4, 2019, this Court held a hearing on motions in limine and issued several orders excluding (or conditionally excluding) some of the government's proffered evidence.[1] The Court also ordered the government to disclose certain evidence requested by the defense. On March 12, 2021, the government provided undersigned counsel with another notice regarding expert testimony.[2] As addressed below, certain aspects of that notice are inconsistent with the Court's December 4, 2019 orders.

Separately, Mr. Gonzalez objects to a socially-distant jury trial and moves to continue the trial until the courts are fully operational and socially-distant trials are not necessary.

I. **The Court should continue this trial until the courts are fully operational and a socially-distant trial is not necessary.**

This case is undeniably long in the tooth. That is largely due to the global pandemic, however. This case is also much more complicated than border busts from days of yore. The government has proffered multiple expert witnesses, taken the deposition of a potential lay witness, interviewed several potential civilian witnesses, detained and interviewed Mr. Gonzalez's wife,[3] produced several hundred pages of discovery, and produced multiple electronic versions of the contents of Mr. Gonzalez's cell phone. This extensive investigation has raised several significant evidentiary issues, some – but not all – of which have previously been addressed. The government also disclosed potential impeachment evidence regarding its case agent, from when she was a prosecutor in the State of Michigan. That disclosure resulted in several rounds of briefing and an

---

[1] The transcript of the December 4, 2019 hearing is attached as Exhibit A.

[2] Attached as Exhibit B.

[3] That interview was conducted in a foreign language and videotaped; the transcript of the interview has not yet been provided to the defense.

interlocutory appeal. For his part, Mr. Gonzalez has been on bond for over three years with no problems, whatsoever.

Under CJO 36-A, this Court began conducting "short cause" criminal trials beginning on March 8, 2021, with priority for in-custody defendants. While this case may qualify as a short-cause trial,[4] Mr. Gonzalez is not in custody and he is not demanding a speedy trial. Furthermore, this is a serious case. There is a ten-year mandatory minimum in play, and – if convicted – Mr. Gonzalez would be facing a guidelines range of 292 months to life.[5]

Mr. Gonzalez objects to a socially-distant trial. As a preliminary matter, undersigned counsel is frankly concerned that he cannot be effective in a socially-distant courtroom while wearing a mask. He recently conducted a socially-distant evidentiary hearing and experienced problems with both the witnesses and the court reporter being able to hear him. Counsel is accordingly concerned that his ability to communicate with the jury will be compromised.

Evaluating the demeanor of witnesses will also be difficult from long distances and while people are wearing masks. This will be a problem for both the lawyers and the jurors. Undersigned counsel is also concerned that his ability to communicate with Mr. Gonzalez during the trial will be impaired and could interfere with Mr. Gonzalez's ability to assist in his own defense.

Finally, Mr. Gonzalez is concerned about the Court's ability to empanel a fair and impartial jury while the community (or state) is still on partial lock down. As courts begin to reopen, it stands to reason that many people (particularly those who have not yet been vaccinated) will be reluctant to serve as jurors. Because of the vaccination protocol,

---

[4] The current trial estimate is two-to-three days, but a hiccup (e.g., an unexpected rebuttal case or an unexpectedly unavailable witness), could result in the trial lasting more than four days.

[5] Based on a Base Offense Level 38, +2 for importation of methamphetamine. See USSG 2D1.1(b)(5).

younger people are less likely to be vaccinated than older people. Moreover, some early vaccination statistics suggest that minorities and underprivileged members of society are being vaccinated at lower rates than white people and people of means. Mr. Gonzalez wants to have a jury pool that is representative of his community – not just a part of his community.

According to recent projections, the majority of Americans who want the vaccine should be vaccinated by June. And, with any luck, courts should be operating normally again by summer.[6] Mr. Gonzalez's case is not a priority for the Court because he is not in custody. The case is also quite serious. He respectfully requests that this Court continue his trial until socially-distant trials are no longer necessary.

II.  **The Court should exclude the currency seized from Mr. Gonzalez at the time of his arrest.**

The government may seek to introduce the fact that Mr. Gonzalez had $2,540 in U.S. currency at the time of his arrest. Such evidence is not "inextricably intertwined" because it is neither "a part of the transaction that serves as the basis for the criminal charge" nor is it "necessary . . . in order to permit the prosecutor to offer a coherent and comprehensible story." *United States v. Vizcarra-Martinez,* 66 F.3d 1006, 1012 (9th Cir. 1995). It is accordingly "other act" evidence subject to Rules 404(b) and 403. *See id.* at 1013.

This evidence flunks two prongs of the Ninth Circuit's four-part test for admissibility under 404(b). First, such evidence must "tend to prove a material point." *United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir. 1994). To that end, the government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *Id.* The fact that Mr. Gonzalez – who deals in

---

[6]  Undersigned counsel's observations regarding the current state of the pandemic are based upon what he has recently seen reported by various news outlets.

used cars – had $2,540 in cash on him at the time of his arrest does not tend to prove a material point.

Second, evidence that Mr. Gonzalez possessed currency is not sufficiently similar to the offense charged. Where knowledge is at issue, the Ninth Circuit "has emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *Id.* 1181-82. In other words, "similarity is necessary to indicate knowledge and intent," *id.* at 1182, and there is no similarity between the possession of currency and the possession of illegal drugs.

Finally, the Ninth Circuit also requires a balancing under Rule 403. *See id.* at 1183. Here, evidence of a large amount of currency would be unfairly prejudicial because it would permit the government – absent a proper evidentiary basis – to portray Mr. Gonzalez as a stereotypical a drug dealer. This Court has undoubtedly had hundreds of similar cases before it where an accused load driver did *not* have a large amount of cash on his or her person at the time of arrest. The probative value of such evidence is accordingly de minimis, if not nonexistent. The potential for unfair prejudice however, is extraordinarily high. The Court should exclude this evidence under Rule 403.

### III. The Court should preclude statements and / or testimony from Mr. Gonzalez's current spouse.

Mr. Gonzalez is married to Ana Lilia Velazquez Camacho. On April 22, 2019, the case agent detained Ms. Velazquez at the San Ysidro Port of Entry and video recorded a lengthy interview in the Spanish language.[7] The government is also apparently going to serve her with a subpoena. This Court should exclude those statements and preclude her testimony.

The Federal Rules of Evidence provide that "the privilege of a witness [or] person .

---

[7] The government has not yet produced the translation of that interview.

. . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. The Supreme Court has recognized two privileges that arise from marriage. The first permits a witness to refuse to testify against his or her spouse. *See Trammel v. United States*, 445 U.S. 40, 53 (1980).

In the first place, Ms. Velazquez's statements during her interview are testimonial hearsay and not admissible. With respect to her potential testimony, in the event that Ms. Velazquez chooses to exercise her right not to testify against her husband, she may not be compelled to do so. *See id.*

**IV.    The Court should enforce its previous orders.**

   *A.    Structure testimony has been excluded.*

In its March 12, 2021 correspondence, the government states that it intends to introduce expert testimony regarding the structure of drug-trafficking organizations and blind mules by Agent Andrew Flood if "Mr. Gonzalez seeks to establish that the drugs were put in the Accord by a drug smuggler . . . without his knowledge." Exhibit B at 2. This Court has previously ruled – and the prosecutor has previously conceded – however, that merely denying knowledge will not "open the door" to this type of expert testimony:

> The Court:    On structure evidence . . . . I agree with the general observations of Mr. Gonzalez that simply disputing knowledge doesn't open the door, there would have to be something more. The trial I just did the defense went into fingerprings and DNA, and I think that opened the door. . . . So absent something like that, the door would not be opened, structure evidence, that kind of thing, would not come in.
>
> Mr. Roth:    On that point we agree with the Court hat it would take more than simply arguing about lack of knowledge to open the door. . . . For example, the two trials the court saw this past week, the defense opened the door by asking questions of witnesses about the absence of fingerprints on the packages. . . . There was a defense expert about blind mules, things like that. So absent that we agree the door would not be opened.

Exhibit A at 5, 16.

//

    B.    *TECS has been tentatively excluded.*

The government also states that it intends to introduce TECS records of Mr. Gonzalez's border-crossing history. This Court, however, issued a tentative to exclude this evidence and invited supplemental briefing. Exhibit A at 47 (noting that "there is a big 403 issue").

    C.    *The government has not complied with its obligation to identify the evidence from Mr. Gonzalez's cell phone that it plans to admit.*

In its March 12 letter the government again states that it intends "to admit data appearing on the device [(cell phone]) relevant to your client's guilt." Exhibit B at 3 (referring to August 2019 disclosure letter). Mr. Gonzalez objected to this proffer during the December 12, 2019 hearing, explaining that identifying "all the evidence on the phone that makes your client guilty doesn't really help me much." Exhibit A at 12. In response, the prosecutor stated that he had "no objection" to counsel's request and that "we will try to do two or three weeks before trial we will preview all of our trial exhibits for counsel." *Id.* That disclosure has not yet occurred.

## V.  Conclusion

Mr. Gonzalez respectfully requests that the Court grant these motions *in limine*.

                                                                                Respectfully submitted,

Dated: March 19, 2021                        /s/ John C. Lemon
                                                                  **JOHN C. LEMON**
                                                                  Attorney for Mr. Gonzalez